State, *ex rel.*, *v.* Cates.

STATE, *ex rel.*, *v.* CATES.

(*Knoxville.*    October   8,   1900.)

1. JUSTICE OF THE PEACE. *Additional, for districts including county towns.*

    That provision of the Constitution that gives an additional justice of the peace to "districts including county towns," and the statute enacted pursuant thereto, do not give an additional justice of the peace to each of several districts, included, in whole or in part, within the county town, but only to that district in which the courthouse is located.  (*Post, pp. 442–446.*)

    Constitution construed: Art. VI., Sec. 15.

    Code construed: § 427 (S.); § 392 (M. & V.); § 339 (T. & S.).

    Case cited: State, *ex rel.*, *v.* Justices, 90 Tenn., 722.

2. ELECTIONS. *Of Justice of the Peace.*

    Although the law authorized the election of three justices for a civil district, the candidate receiving the third highest vote in a justice's election for that district is not entitled to the office, where the officers of election prepared ballots for the election of only two justices, and certified the election of only two, and the people voted for only two.  (*Post, pp. 446, 447.*)

---

FROM   KNOX.

---

Appeal   in   error   from   Circuit   Court   of   Knox County.   JOSEPH   W.   SNEED,   J.

TILLMAN   &   VANDEVENTER   and   WEBB   &   McCLUNG   for   Relator.

GREEN   &   SHIELDS   and   CHARLES   T.   CATES   for Cates.

State, *ex rel.*, *v.* Cates.

McALISTER, J.   The petitioner, C. H. Flournoy, claiming to have been elected a Justice of the Peace for the Twenty-fourth Civil District of Knox County at the August election, 1900, filed this petition for the writ of mandamus to compel the Commissioners of Election to issue to relator a certificate of election.   The Twenty-fourth Civil District of Knox County now comprises the tenth ward of the city of Knoxville, and formerly said district and ward composed the municipality of West Knoxville.   In 1897 the Legislature abolished the charter of West Knoxville and merged said municipality in the old corporation of Knoxville. Said Act of consolidation provided that the old territory embraced within the former limits of West Knoxville should constitute the tenth ward of the city of Knoxville.   Prior to this time, to wit, on the 4th of April, 1887, the County Court of Knox County, pursuant to the powers conferred by the Constitution and statutes of the State, carved out of the Twelfth Civil District of Knox County the Twenty-fourth Civil District, making its metes and bounds commensurate with the limits of the municipality of West Knoxville.   It should also be stated that prior to the consolidation Act, and at the present time, the city of Knoxville proper comprised the First Civil District of Knox County.   The separate municipality of North Knoxville, which was also merged into the city of Knoxville by said consolidation Act of

1897, formerly comprehended a part of the Second Civil District of Knox County. The consolidation Act of 1897 did not undertake to affect the status of any of these civil districts, but simply abolished the charters of West Knoxville and North Knoxville, annexing the territory therein and merging the inhabitants thereof into the city of Knoxville, and providing also that the old tenants of West Knoxville should constitute the tenth ward of the city of Knoxville. It appears from the petition that at the general election on August 2, 1900, two Justices of the Peace were to be elected for the Twenty-fourth Civil District of Knox County, and that the voters were instructed by the Commissioners of Registration on the face of the ballots to vote for two Justices of the Peace. At said election the relator, C. H. Flournoy, was a candidate for Justice of the Peace and received 125 votes, while two candidates each received a higher vote, namely: Thomas Rodgers 178, and A. T. Scott 141 votes. Nevertheless the relator claims to have been elected, his insistence being that said Twenty-fourth Civil District was entitled by law to three Justices. The Commissioners decided that said district was only entitled to elect two Justices, and issued certificates of election to Rodgers and Scott, but refused to issue a certificate to relator.

The Constitution, Art. 6, Sec. 15, provides, viz.: "There shall be two Justices of the Peace elected

in each district by the qualified voters therein, except in districts including county towns, which shall elect three Justices. . . . The Legislature shall have power to provide for the appointment of an additional number of Justices of the Peace in incorporated towns."

The contention of the relator is that the Twenty-fourth Civil District is entitled to three Justices because it includes a part of the city of Knoxville, which is a county town within the meaning of the Constitution. It is insisted that the true interpretation of the Constitution is that any entire district wherein the county town is located, whether in whole or part, is entitled to three Justices of the Peace, and that relator having secured 125 votes, being one of the three who had the highest number of votes cast in said election, was duly and constitutionally elected in and for said district.

The city of Knoxville is not wholly included within any one of the three districts, but is partially in each, and embraces the First Civil District, the Twenty-fourth Civil District, and a part of the Second Civil District of Knox county. It is argued that when two or more civil districts include part of a county town, the Court should follow the evident tendency and spirit of the Constitution to give additional representation in the County Court to districts including incorporated or county towns, and hold that both districts

are entitled to a third Justice rather than hold that neither of them is so entitled, or rather than hold that one of said districts is and that the other similarly situated is not so entitled.

It may be admitted that the object of allowing an additional Justice in districts including a county town is to increase the facilities for the transaction of business in centers of population, but it is true that unless a district includes a county town it is only entitled to two Justices, regardless of its population. But what is the meaning of the term county town as employed in this clause of the Constitution? We are constrained to hold that it means the county seat, where the courthouse is situated, and that the district including the county town where the courthouse is located is entitled to the additional Justice of the Peace. If this is not so, then every civil district containing a town is entitled to elect three Justices of the Peace. Moreover the number of Justices could be multiplied by the extension of the corporate limits of the municipality into other civil districts of the county. *State, ex rel.,* v. *The New Justices,* 6 Pick., 722. In our opinion the true test of the power of a particular civil district to elect three Justices of the Peace depends upon the question whether the county town is the seat of the county, where its courthouse is located for the transaction of its public business. It will be observed that we do

not include the county jail, workhouse, or other public building, in making the test of what constitutes the county town, but confine our test to the location of the courthouse.

Article 6 of the Constitution provides that the Legislature shall have power to provide for the appointment of an additional number of Justices of the Peace in incorporated towns. Shannon's Code, § 427, enacted pursuant to this power in the Constitution, provides that for every incorporated town "one Justice of the Peace is to be elected by the qualified voters therein."

It will be observed that this additional Justice is provided for an incorporated town and not for the civil district. We have not intended by anything said in this opinion to question the right of incorporated towns to elect Justices of the Peace under the clause of the Constitution and section of the Code last quoted, but have dealt exclusively with Sec. 15 of the Constitution, authorizing the election of three Justices by civil districts including a county town (where the courthouse is located).

In conclusion, we may add that there is no view of the case in which the relator can rightfully claim to have been elected a Justice of the Peace for the Twenty-fourth Civil District. In the first place there was no election held for three Justices in said district, but the voters were instructed by the Commissioners of Registration,

by printed notices on the face of the official ballot, to vote for two Justices. The returns and certificates of election show that two of the candidates received the highest number of votes and were declared elected. Again, the relator cannot claim to have been elected for the incorporated city of Knoxville, since he charges in his petition that he was a candidate for Justice of the Peace in the Twenty-fourth civil district, and was voted for by the qualified electors therein and not by the qualified voters of the corporation of Knoxville. The relator attacks the constitutionality of Chap. 328, Acts of 1897, which abolished the charter of the town of West Knoxville, but we have not considered that question, for the reason that relator has no status in this litigation that would authorize such an attack, and we are unable to perceive how the settlement of this question would affect his rights. There was no error in the action of the Circuit Judge in sustaining the demurrer and dismissing the petition.

Affirmed.